# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SANDRA K. BOWERMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-18-292-SPS |

## OPINION AND ORDER

The claimant Sandra K. Bowerman requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-six years old at the time of the administrative hearing (Tr. 40). She completed ninth grade and has worked as a vault teller, casino manager, nurse assistant, warehouse worker, and prep cook (Tr. 40, 65). The claimant alleges she has been unable to work since December 1, 2014, due to a hip and back injury, arthritis in her lower back, bulging disc, herniated disc, twisted pelvic bone, migraine headaches, inability to drive due to medication, loss of balance, use of walker and cane, depression, and anxiety (Tr. 191, 227).

## Procedural History

In December 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 191-97). Her application was denied. ALJ Douglas S. Stults conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 16, 2017 (Tr. 12-25). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work with

occasional climbing ramps/stairs, balancing, stooping, kneeling, and crouching, and never climbing ladders, ropes, or scaffolds (Tr. 17). The ALJ further found that the claimant must avoid exposure to industrial-type vibration and workplace hazards such as dangerous moving machinery or unprotected heights (Tr. 17). He also found the claimant required a sit/stand option whereby she could sit for about thirty minutes before standing briefly at the workstation for less than five minutes and should not be on her feet for more than fifteen minutes at any one time (Tr. 17). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, address clerk, document preparer, and information clerk (Tr. 25-26).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the opinions of treating physician Dr. Stidham and chiropractor Dr. West. The Court agrees the ALJ did not properly evaluate Dr. West's opinion, and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant's disorders of the lumbar spine, discogenic and degenerative, with pain and radiculopathy were severe; but that her right hip pain, migraines, and adjustment disorder with mixed anxiety and depressed mood were non-severe (Tr. 15). The relevant medical records reveal that the claimant presented to chiropractor Dr. Matt West on June 17, 2015 and reported low back pain radiating into her right hip since December 2014, which she indicated stemmed from an injury in 2004 (Tr. 348-53). On physical examination, Dr. West found the claimant had normal posture,

an unusual gait, as well as tenderness to palpation, muscle spasm, and restricted range of motion in her lumbar spine and sacroiliac joints (Tr. 353). By July 3, 2015, the claimant was feeling much better and Dr. West noted she had a normal gait and posture and improved, but still restricted, range of motion in her lumbar spine and sacroiliac joints (Tr. 358). On July 30, 2015, the claimant experienced an exacerbation after doing yardwork and Dr. West found she had a normal gait and posture and restricted range of motion in her lumbar spine and sacroiliac joints (Tr. 361). He recommended she should follow-up only as needed (Tr. 361). The claimant returned to Dr. West on September 15, 2015, and reported that she was taking care of her dad and had been "lifting, pushing/pulling, etc." (Tr. 361). Dr. West found the claimant had tense posture, an unusual gait, and restricted range of motion throughout her spine (Tr. 362). He referred the claimant for a lumbar spine MRI, the results of which revealed a right paracentral disc protrusion at L5-S1 and a foraminal disc herniation at L4-5 on the left (Tr. 395). Dr. West also referred the claimant for an MRI of her right hip which was normal (Tr. 393-4).

On November 3, 2015, the claimant presented to Dr. William Harris, an orthopedic surgeon, for pain in her low back and right hip (Tr. 427-28). On physical examination, Dr. Harris found tenderness in the claimant's midline, paraspinal muscles, and sciatic notches; limited range of motion in her back secondary to pain; 5/5 motor strength in all groups bilaterally; decreased sensation on her right thigh, leg, and ankle; a normal gait; and pain in her lumbar spine, buttocks, thighs, and legs (Tr. 427). He diagnosed the claimant with degenerative disc disease (lumbar), chronic low back pain, other chronic pain, sciatica, and herniated nucleus pulposus (lumbar) and prescribed medications (Tr. 428). At a follow-up

appointment on February 4, 2016, the claimant reported the medications were ineffective and Dr. Harris recommended lumbar epidural steroid injections (Tr. 425-26).

The claimant established care with Dr. Shane Stidham on February 11, 2016 and reported intermittent low back pain radiating into her right leg and foot and occasionally radiating into her left leg and foot for ten years, which she described as severe for the previous two months (Tr. 435). On physical examination of the claimant's lumbar spine, Dr. Stidham found paraspinal muscle tenderness, limited range of motion due to pain and stiffness, a positive straight leg raise test at thirty degrees, a normal gait, and normal lower extremities (Tr. 436). He diagnosed the claimant with intervertebral disc disorder with radiculopathy of the lumbar and lumbosacral regions (Tr. 436). Dr. Stidham administered epidural steroid injections in February 2016 and in March 2016 (Tr. 433-38). On February 26, 2016, Dr. Stidham completed an order for a walker with a seat attachment (Tr. 439-40). As part of this order, he indicated that the claimant had mobility limitations that significantly impaired her ability to walk, was at risk of falls without the walker, and that her impairment could be sufficiently resolved with the use of a walker (Tr. 439). He rated the claimant's impairments as severe and stated her prognosis was poor (Tr. 439).

The claimant returned to Dr. West in April 2016 and he consistently treated her back and hip pain through November 2016 (Tr. 400-23). Dr. West frequently found the claimant had a tense posture, an antalgic or unusual gait, and restricted range of motion in her lumbar spine and sacroiliac joints, but always indicated that she was "better" after treatment (Tr. 400-23). On August 25, 2016, Dr. West completed a "To whom it may concern" letter stating that the claimant was under his care for her medical problems (Tr. 398). Dr. West

also stated that the claimant was encouraged to keep her scheduled appointments and to walk as much as possible to help with her condition (Tr. 398). He indicated that her pain relief progress was slow but that treatment had reduced her pain (Tr. 398). Dr. West opined that the claimant was "limited on bending, twisting, stretching, pushing or pulling, and is to only lift what she can handle or feels comfortable with." (Tr. 398).

Dr. Alan Miner performed a consultative physical examination of the claimant on March 5, 2016 (Tr. 376-84). He observed she presented with a walker for stability but was able to walk around the exam room without it, was able to lift, carry, and handle light objects, squat and rise from that position with moderate difficulty, rise from a sitting position with assistance, and had some difficulty getting up and down from the exam table (Tr. 383-84). Dr. Miner also found the claimant was unable to walk on her heels and toes, could tandem walk, and could stand but was unable to hop on either foot bilaterally (Tr. 384). Dr. Miner stated that the claimant had minor range of motion limitations in her back secondary to subjective pain, but that the remainder of her physical examination was within normal limits (Tr. 384). He opined that the claimant was able to ambulate without the assistance of a walker (Tr. 384).

State agency physician Dr. David McCarty reviewed the record on March 23, 2016 and found that the claimant could perform light work with frequent climbing ramps and stairs and occasional stooping and climbing ladders, ropes, or scaffolds (Tr. 77-79). State Agency physician Dr. Luther Woodcock reviewed the record on May 16, 2016 and found the claimant could perform light work, but with fewer postural limitations (Tr. 92-94).

At the administrative hearing, the claimant testified that she was unable to work due to back pain, hip pain, and migraine headaches (Tr. 44). She further testified that her low back pain and right hip pain are constant, but that her right hip pain varies in severity (Tr. 45-46). The claimant stated that once per month, her right hip "locks up," causing her to lose control of her right leg, and that these episodes always last a day but have lasted up to two weeks (Tr. 47-48). The claimant indicated that Dr. Stidham prescribed a walker because she began losing sensation in her legs after her first epidural steroid injection (Tr. 49-50). The claimant indicated she uses the walker whenever she needs to walk more than one-half block (Tr. 50-51). As to specific limitations, the claimant stated she could sit for ten minutes before needing to stand or lie down, could stand for ten or fifteen minutes before needing to sit or lie down, could walk one-half block without a walker, could bend to her knees, struggled to lift a gallon of milk, could not squat, and needed to lie down at least twice per day for twenty or thirty minutes to relieve pain (Tr. 56-57, 60).

In his written opinion, the ALJ summarized the claimant's testimony and the medical record. In discussing the opinion evidence, he gave great weight to Dr. Miner's opinions that the claimant could ambulate without the assistance of a walker and lift, carry, and handle light objects, finding such opinions were consistent with Dr. Harris' November 2015 and February 2016 examinations where the claimant had 5/5 strength, equal reflexes, a normal gait, and negative straight leg raise testing (Tr. 23). The ALJ gave some weight to the state agency physicians' opinions but limited her to sedentary work with additional non-exertional functional limitations in light of Dr. Miner's consultative examination findings and the claimant's subjective statements (Tr. 24). The ALJ noted Dr. West's

August 2016 letter but gave it minimal weight because he was not an acceptable medical source (Tr. 24). The ALJ also gave minimal weight to Dr. Stidham's opinion that the claimant required a walker because it was inconsistent with: (i) his own treatment notes that reflected the claimant's motor strength, sensory, and gait were within normal limits; (ii) Dr. Miner's consultative examination findings; (iii) Dr. Harris' November 2015 and February 2016 examination findings; and (iv) the state agency physicians' opinions (Tr. 24).

Social Security regulations provide for the proper consideration of "other source" opinions such as that provided by Dr. West herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006).[3] The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise;

---

[3] 20 C.F.R. §§ 404.1527, 416.927 were revised for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844–45. Additionally, Soc. Sec. Rul. 06-03p was rescinded for claims filed on or after March 27, 2017. *See* Soc. Sec. Rul. 96-2p, 2017 WL 3928298 (Mar. 27, 2017). Because the claimant filed her application on December 10, 2015, the pre-2017 versions of 20 C.F.R. §§ 404.1527, 416.927 and Soc. Sec. Rul. 06-03p apply in this case.

and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *4-5; 20 C.F.R. §§ 404.1527(c), 416.927(c). Although the ALJ noted at the outset of step four that he considered the opinion evidence pursuant to 20 C.F.R. § 404.1527, he made no reference to these factors in his analysis of Dr. West's opinion and it is therefore unclear whether he considered any of them (Tr. 17, 24). *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original]. Instead, the ALJ rejected Dr. West's opinion solely because he was not an acceptable medical source, which is an insufficient basis for disregarding his opinion (Tr. 24). *See, e. g ., Carpenter v. Astrue,* 537 F.3d 1264, 1267–68 (10th Cir. 2008) ("Although a chiropractor is not an 'acceptable medical source' for *diagnosing* an impairment under the regulations, the agency has made clear that the opinion of such an 'other source' is relevant to the questions of *severity* and *functionality.* The ALJ was not entitled to disregard the 'serious problems' set out in Dr. Ungerland's opinion simply because he is a chiropractor.") [emphasis in original] [citations omitted]. This analysis was particularly important here because Dr. West was the claimant's main treating provider for much of the relevant period, albeit a treating "other source" provider.

The Commissioner argues that any error the ALJ made in assessing Dr. West's opinion was harmless because he did not articulate any specific functional limitations or support his conclusions with evidence. However, this amounts to an improper post-hoc argument, as the ALJ made no attempt to disregard Dr. West's opinion on this basis. *See*

*Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. Dr. West indicated the claimant was "limited on bending, twisting, stretching, pushing or pulling" and was to only lift "what she can handle or feels comfortable with." The ALJ did not include RFC limitations on twisting, stretching, or pushing/pulling, nor did he explain why such limitations were not necessary. Although the ALJ limited the claimant to sedentary work and occasional stooping, he did not explain that these limitations accounted for Dr. West's opinion. Accordingly, the Court is unable to follow the ALJ's reasoning. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). Given the extensive treatment Dr. West provided and the absence of *any* limitations on twisting, stretching, or pushing/pulling in the RFC, a full consideration of Dr. West's opinion could reasonably support a different result.

Because the ALJ failed to properly consider Dr. West's opinion, the Commissioner's decision is reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 16th day of March, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**